Stuart SARGISSON, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 90–5034.

United States Court of Appeals, Federal Circuit.

Aug. 31, 1990.

Rehearing Denied Oct. 18, 1990.

Guy J. Ferrante, King & Everhard, P.C., Falls Church, Va., argued, for plaintiff-appellant.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on brief, were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on brief, was Major Alice Kottmyer, Dept. of Air Force, of counsel.

Before NEWMAN and MAYER, Circuit Judges, and BROWN, District Judge.[*]

## OPINION

MAYER, Circuit Judge.

Stuart Sargisson appeals the judgment of the United States Claims Court, No. 39–80C (October 13, 1989), that it was without jurisdiction to review the Secretary of the Air Force's decision to release Sargisson from active duty as an Air Force reserve officer. We affirm on other grounds.

---

[*] Garrett E. Brown, Jr., District Judge, United States District Court for the District of New Jersey, sitting by designation.

## Background

In 1962, Sargisson was commissioned as a second lieutenant in the Air Force Reserve and began extended service on active duty. By 1974, he had been promoted to major. Because of a reduction in manpower requirements, the Secretary of the Air Force convened a Reserve Officer Screening Board (ROSB) on November 11, 1974 to review the records of all reserve officers on active duty. Pursuant to a Letter of Instructions, the ROSB aligned the officers in relative order of merit for each fiscal year group and recommended the release of those officers found to be least qualified in each group. Over 20,000 reserve officers were reviewed, and 1133 of them, including Sargisson, were involuntarily released from active duty. In accordance with Air Force policy, the records of the ROSB proceeding were destroyed.

In 1977, Sargisson applied to the Air Force Board for the Correction of Military Records, requesting that an unfavorable Officer Effectiveness Report (OER) and a letter of reprimand be deleted from his record and that he be reinstated on active duty. The board removed the contested OER from Sargisson's record, but did not recommend that he be reinstated because "the likelihood is remote that the removal of a single OER would change his rating so much that he would have been retained on active duty."

Sargisson filed suit in the Claims Court, seeking reinstatement and back pay on the grounds that the board's refusal to reinstate him was arbitrary and capricious. In an amended complaint, he also asserted that the ROSB that reviewed his record failed to include "an appropriate number of Reserves" as required by 10 U.S.C. § 266(a) (1970) (amended 1981) because

only one out of 52 members was a reserve officer. The Claims Court suspended proceedings to allow Sargisson to apply to the board for relief based on section 266(a), but the board concluded that no material error or injustice had been shown and again denied reinstatement.

The Claims Court then granted the Air Force's motions for summary judgment, ruling that both of Sargisson's claims were barred by laches. No. 39–80C (Cl.Ct. September 5, 1985); 12 Cl.Ct. 539 (1987). Sargisson appealed, and this court vacated and remanded for reconsideration of the laches issue in light of *Cornetta v. United States*, 851 F.2d 1372 (Fed.Cir.1988) (in banc). 854 F.2d 1327 (Fed.Cir.1988) (unpublished). On remand, the Claims Court again granted summary judgment for the Air Force, concluding that "[b]ecause the power to release reserve officers from active duty is vested within the sole discretion of the Secretary of the Air Force, the Claims Court is without jurisdiction to review the Secretary's decision to release [Sargisson] from active duty."

## Discussion

█ As an Air Force reserve officer on active duty, Sargisson was entitled to pay and allowances under 37 U.S.C. § 204(a)(1) (1970) (amended 1980).[1] Sargisson maintains that he was improperly released from active duty and that the board erred in denying him reinstatement and the pay and allowances of the office. These claims are within the Claims Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a) (1988).[2] *Sanders v. United States*, 594 F.2d 804, 810, 219 Ct.Cl. 285 (1979) (distinguishing *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Therefore, the real issue in this case is not

1. (a) ... the following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service ... (1) a member of a uniformed service who is on active duty....

2. (1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon ... any Act of Congress or any regulation of an executive department....

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position ... and correction of applicable records, and such orders may be issued to any appropriate official of the United States....

whether the Claims Court had jurisdiction, but the scope of its power to review the Air Force's decision to release Sargisson from active duty.

■ The Secretary of the Air Force is authorized to release reserve officers from active duty under 10 U.S.C. § 681(a) (1970): "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." The statute does not place any procedural or substantive limitations on the Secretary's discretion. *Woodward v. United States*, 871 F.2d 1068, 1071 (Fed.Cir.1989). Nevertheless, once the Secretary promulgated regulations and instructions and made them the basis for Sargisson's release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all. *See Vitarelli v. Seaton*, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) ("Since ... the Secretary gratuitously decided to give a reason, ... he was obligated to conform to the procedural standards he had formulated ... for the dismissal of employees on [those] grounds," citing *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)); *see also Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all ..."); *Borgford v. United States*, 208 Ct.Cl. 1040, 1041 (1976) ("in establishing the career reserve system, designating particular grounds on which such career reservists may be released from extended active duty ... and specifying one of those grounds ... as the reason for plaintiff's release from active duty, the Air Force limited its otherwise plenary discretion un-der 10 U.S.C. § 681(a), so that plaintiff is entitled to appropriate judicial review of the specific ground given for her release").

■ The reason for Sargisson's release from active duty was a reduction in manpower requirements. Air Force Regulation (AFR) 36–12 ¶ 71 (June 28, 1973) [3] governed the release of reserve officers because of a strength reduction. It required the Secretary of the Air Force to "issue specific instructions governing the criteria and procedures to be utilized in effecting the reduction in strength." By way of implementation, the Secretary issued a Letter of Instructions convening a ROSB to review the performance records of all active duty reserve officers, align them in a relative order of merit using the best qualified method of selection, and recommend the least qualified for release from active duty. In convening this ROSB, the Secretary was also required to comply with section 266(a). *See, e.g., Stewart v. United States*, 611 F.2d 1356, 222 Ct.Cl. 42 (1979). Thus, the Claims Court had jurisdiction to determine whether the Air Force complied with AFR 36–12 ¶ 71, the Letter of Instructions and 10 U.S.C. § 266(a) (1970) (amended 1981).[4]

■ Nevertheless, the Secretary's compliance with AFR 36–12 ¶ 71 and the Letter of Instructions is beyond the ken of judicial competence; it is nonjusticiable.

The distinction between [nonjusticiability and lack of jurisdiction] is significant. In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.

---

**3.** Release Due to Strength Adjustments. Budgetary limitations and reduced manpower ceilings may require that the strength of the Air Force be reduced. When such action is necessary, HQ USAF will issue specific instructions governing the criteria and procedures to be utilized in effecting the reduction in strength. When it is necessary to release Reserve and temporary officers from extended active duty in connection with such a pro-gram, their release will be effected under this paragraph and any supplemental instructions which may be issued by HQ USAF. Officers released under this paragraph are considered to be involuntarily separated.

**4.** Of course, this determination is not *de novo*. The Claims Court reviews the Correction Board's decision. *Sanders*, 594 F.2d at 811.

*Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1961). "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge,* 844 F.2d at 780 (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). Neither AFR 36–12 ¶ 71 nor the Letter of Instructions gave any "tests or standards" by which the Claims Court could determine whether the decision to release Sargisson from active duty was correct.

Sargisson contends that the decision to release him was erroneous because the record of his performance that was made available to the ROSB contained an OER that has since been voided by the board. The board said the OER did "not appear to be an accurate and impartial evaluation of his performance" during the reporting period. Nevertheless, it concluded that removal of this one OER would not have made any difference to his prospects for retention on active duty. There is no way a court can review that conclusion. A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit. To act on our suspicion that in light of the small percentage of officers released the OER did matter, would be to second-guess the board's determination on no more than speculation.

By contrast, in "pass-over" cases like *Engels v. United States,* 678 F.2d 173, 230 Ct.Cl. 465 (1982); *Hary v. United States,* 618 F.2d 704, 223 Ct.Cl. 10 (1980); and *Sanders,* 594 F.2d 804, where reserve officers were released from active duty after twice being passed over for promotion, the old Court of Claims reviewed the actions of the selection boards under 10 U.S.C. § 8442(c) (1976) (repealed 1980). To comply with this statute, the record presented to a selection board had to portray an officer's career in a "fair and equitable" manner. *Engels,* 678 F.2d at 177; *Hary,* 618 F.2d at 709; *Sanders,* 594 F.2d at 814. Here there was no statutory standard. Therefore, the substantive merits of the board's decision not to reinstate Sargisson to active duty were beyond the competence of the Claims Court and nonjusticiable. *Voge,* 844 F.2d at 780.

■ Compliance with section 266(a), on the other hand, is a different proposition. Courts often have dealt with section 266(a) in the context of selection boards. *Bockoven v. Marsh,* 727 F.2d 1558 (Fed.Cir.1984); *Dilley v. Alexander,* 603 F.2d 914 (D.C.Cir. 1979); *Doyle v. U.S.,* 599 F.2d 984, 220 Ct.Cl. 285 (1979). And the statute applies to reserve officer screening boards as well. Sargisson's claim that the ROSB was improperly constituted presents no justiciability problem.

The Claims Court held that it lacked jurisdiction to adjudicate any of Sargisson's claims, but it nevertheless said that "under the circumstances of this case it would seem that the presence of one reserve officer was 'appropriate' and that the Secretary complied with 10 U.S.C. § 266(a).…" The court applied the version of section 266(a) in effect in 1974 when the ROSB that considered Sargisson was convened: "Each board convened for the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of Reserves shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense." 10 U.S.C. § 266(a) (1970). The statute was amended in 1981 to provide that boards "shall include at least one member of the Reserves, with the exact number of Reserves determined by the Secretary concerned in his discretion." 10 U.S.C. § 266(a) (1988).

■ The Air Force argues that the amendment to section 266(a) is curative or remedial and therefore retroactively applies to the 1974 ROSB. But "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). There is an irrec-

oncilable conflict between *Bowen* and *Bradley v. Richmond School Bd.*, 416 U.S. 696, 716, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974) ("a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary"), relied upon by the Air Force. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. ——, ——, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). We prefer the longer-standing rule that retroactivity is not presumed.

There is no indication in the language of the amendment to section 266(a) or its background that Congress intended that it apply to boards convened before its effective date. The new statute says "each board ... shall include at least one member of the Reserves...." That sounds prospective to us. The House Report is not to the contrary, saying only that the amendment "would clarify the requirement for reserve membership on selection boards considering reserves [sic] officers." H.Rep. No. 141, 97th Cong., 1st Sess. 7, *reprinted in* 1981 U.S.Code Cong. & Admin.News 24, 30.

■ Section 266(a) was enacted because "Congress was concerned that the military establishments (with their significant sector of Regular officers) not discriminate against Reserves." *Doyle*, 599 F.2d at 994; *see* 10 U.S.C. § 277 (1970). But where only reserve officers were being considered, there was no opportunity for discrimination. Sargisson was not competing with regular officers for retention on active duty. Therefore, even if the composition of the 1974 ROSB did not comply with section 266(a), he could not have been prejudiced. The cases he relies on, *Bockoven v. Marsh*, 727 F.2d 1558; *Stewart*, 611 F.2d 1356; *Dilley v. Alexander*, 603 F.2d 914; and *Doyle*, 599 F.2d 984, all involved selection boards that considered both regular and reserve officers; the potential for prejudice could not be gain-said. We agree with the Claims Court that, "because all the officers reviewed by the ROSB were reserves, no element of bias could exist

which might favor regular officers over reserves."

*Conclusion*

Accordingly, the judgment of the Claims Court is affirmed.

AFFIRMED.