Richard M. DESHAUTEURS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–626C.

United States Court of Federal Claims.

Nov. 14, 1997.

Peter C. Woods, St. Louis, MO, for plaintiff.

Harold D. Lester, Jr., Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Major Bryan Boyles, Army Litigation Division, of counsel.

## OPINION

MILLER, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, RCFC 12(b)(1), or for failure to state a claim upon which relief may be granted, RCFC 12(b)(4). In the alternative, defendant moved for summary judgment on the administrative record, and plaintiff cross-moved. The issue to be decided is whether plaintiff is entitled to incapacitation pay beyond the six-month period awarded by a civilian review board. Argument is deemed unnecessary.

## FACTS

The administrative record contains the following facts. Sergeant Richard Mark Deshauteurs ("plaintiff") enlisted in the United States Army in 1980 and served until February 1983. On February 13, 1983, plaintiff went on inactive status until September 10, 1985, when he enlisted in the Army Reserve and was assigned to the Individual Ready Reserve ("I.R.R."). Plaintiff served in the I.R.R. until he was honorably discharged on March 1, 1989. In January 1990 plaintiff re-enlisted with the Army Reserve and was reassigned to the I.R.R.

The Army called plaintiff to active duty at Fort Benjamin Harrison, Indiana, for a period of four months, commencing on December 30, 1991. Upon receiving notice of his upcoming active duty status, plaintiff requested and received a four-month leave of absence from his employer, Marriott Hotel. Marriott informed plaintiff that it could not guarantee that his former position would available on his return. Accordingly, by re-enlisting plaintiff placed himself at risk of not having a job to return to after completion of his military commitment.

On approximately January 1, 1992, while on active duty at Fort Benjamin Harrison, plaintiff suffered a knee injury, which after diagnosis and treatment led the Army to place him on convalescent leave on March 27, 1992. As of April 30, 1992, the end of plaintiff's scheduled tour of duty, the Army placed him on incapacitation pay and allowed him to return home. Plaintiff received incapacitation pay from May 1, 1992, until October 31, 1992.

In November 1992 the Command Surgeon requested that plaintiff receive incapacitation pay beyond the six-month statutory limit. On November 25, 1992, the Chief of the Program, Budget and Compensation Policy Division denied plaintiff's request for additional incapacitation pay. The determination was based, in part, on plaintiff's claimed aggravation of an injury initially received prior to entry in the Army, plaintiff's medical documentation stating he had suffered knee problems for years, the Bar to Re-enlistment and letter of reprimand in plaintiff's file for abusing sick call and attempting to defraud the Government, plaintiff's frequent use of sick call while on active duty status in 1992, plaintiff's failure to attend scheduled medical appointments and follow-up medical treatments, and the opinion of plaintiff's former civilian employer—Marriott Hotel—that plaintiff was not interested in returning to work.

Plaintiff filed an application with the Army Board for Correction of Military Records (the "ABCMR") on February 4, 1993, requesting that the order—requiring plaintiff

to repay previously received incapacitation pay—be canceled and that he receive additional incapacitation pay beyond the six-month statutory limit. Plaintiff asserts that he did not receive the ABCMR's December 6, 1995 decision until May 1, 1996. The ABCMR found that plaintiff suffered an injury in the line of duty, correctly received six months incapacitation pay, was not obligated to repay the previously received incapacitation pay, and was not eligible to receive additional incapacitation pay beyond the six-month statutory limit. Army Headquarters denied plaintiff's request for reconsideration of the ABCMR decision on September 18, 1996.

Plaintiff turned next to an informal Physical Evaluation Board (the "PEB") that, on September 19, 1996, determined that he was medically unable to continue his military career. The informal PEB also determined that plaintiff had not suffered his knee injury while on active duty status and that his military service had caused the injury to worsen. As a result, the informal PEB recommended that plaintiff be separated from the military without disability benefits.

In response to this adverse ruling, plaintiff sought a hearing before a formal PEB. The formal PEB, which convened on October 30, 1996, determined that plaintiff's knee problem was related to his military service. Consequently, the formal PEB recommended that plaintiff receive a 10% disability rating and be separated from the military with severance pay. The Secretary of the Army approved the formal PEB's findings on January 6, 1997.

Concurrent with the proceedings before the several PEBs, plaintiff continued to seek reconsideration of the Army's denial of his request for incapacitation pay beyond the six-month statutory limit. The Command Surgeon forwarded to Army Headquarters plaintiff's renewed request for administrative reconsideration of his extension of incapacitation pay on October 18, 1996. The Army denied plaintiff's renewed request on February 20, 1997. This denial was based primarily on the same factors that led to the initial refusal to extend plaintiff's incapacitation pay.[1] Plaintiff was separated from the Army on February 28, 1997.

Plaintiff filed this action on October 3, 1996, while waiting for the formal PEB's determination. Plaintiff seeks additional incapacitation pay because, based on his knee injury, he was unable to perform any of the jobs open to him at the Marriott Hotel and consequently lost all civilian income. Plaintiff seeks 1) incapacitation pay retroactive to October 31, 1992; 2) active duty credit since May 1, 1992; 3) other benefits available to other injured and disabled members of the military; 4) interest and/or penalties accruing as a result of the Army's actions since October 31, 1992; and 5) attorneys' fees.

## DISCUSSION

### 1. Lack of subject matter jurisdiction

When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court is required "to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)). "If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686). Plaintiff, as the party seeking relief, bears the burden of establishing jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

It is a basic tenant of practice before the Court of Federal Claims that a litigant must assert a claim that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in

---

1. Plaintiff maintains that his request for additional incapacitation pay was initially granted in a letter dated January 23, 1997. According to plaintiff, this memorandum was made available to him only after a specific request by his counsel.

tort." 28 U.S.C. § 1491(a)(1) (1994). Although the jurisdictional limits of the Court of Federal Claims are set by the Tucker Act, that statute does not create a substantive cause of action. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) ("The Tucker Act ... is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.").

Plaintiff sues under 37 U.S.C. § 204(i)(2) (1994), which provides: "Pay and allowances may not be paid under subsections (g) or (h) for a period of more than six months. The Secretary concerned may extend such period in any case if the Secretary determines that it is in the interests of fairness and equity to do so." Defendant maintains that section 204(i)(2) contains discretionary language, it is not money-mandating, and therefore jurisdiction is not present.

Section 204(h) permits a member of a military reserve component to recover incapacitation pay under specified circumstances. The ABCMR made such an award on December 6, 1995. Plaintiff received incapacitation pay for the period of May 1, 1992, through October 31, 1992. The ABCMR refused, however, to award plaintiff further incapacitation pay. It is for this reason that defendant correctly notes that plaintiff's cause of action derives from 37 U.S.C. § 204(i)(2), which under certain circumstances permits an award of incapacitation pay beyond the six-month period authorized by section 204(h).[2]

■ The gravamen of this dispute is whether the use of the permissive word "may" in section 204(i)(2) renders the statute entirely discretionary and thus not money-mandating. In order for a statute to be considered money-mandating, its language and effect must be mandatory. *See Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)).

Moreover, that discretionary language is used is not dispositive of the issue. *See, e.g., Hoch v. United States,* 33 Fed.Cl. 39, 43 (1995).

■ In support of jurisdiction, plaintiff cites *Doe v. United States,* 100 F.3d 1576 (Fed.Cir.1996). The Federal Circuit in *Doe* was construing 19 U.S.C. § 1619 (1994), which provides that the Secretary of the Treasury "may award and pay such person [an informant] an amount that does not exceed 25 percent of the net amount so recovered." Defendant argued that the permissive language of the statute vested the Secretary with absolute discretion to either make an award or not, thus rendering the statute not money-mandating. The Federal Circuit disagreed.

The analysis used by the Federal Circuit in construing the moiety statute is not applicable to the case at bar. As an initial matter, it is noted that "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir. 1988) (quoting *Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654–55, 69 L.Ed.2d 478 (1981)). Consequently, this court cannot accept the analysis applicable to the moiety statute and apply it to the military—an arm of the Government over which federal courts must exercise special care when exercising the power of judicial review.

Moreover, a careful reading of *Doe* suggests that the Federal Circuit responded to the statutory scheme under which 19 U.S.C. § 1619 was enacted. As the appellate court pointed out, an earlier version of the moiety statute was enacted to create an incentive for individuals to pass information to the authorities to prevent narcotics smuggling. *Doe,* 100 F.3d at 1580. With such clear congressional intent behind the statute, the Federal Circuit concluded that "judicial review was available to ensure that award determinations furthered Congressional policy." *Id.* It would be nonsensical for the Secretary to be

2. Although plaintiff maintains that he is seeking relief under section 204(g), which governs disability pay, the ABCMR considered his application under section 204(h), as indicated in the advisory opinion dated September 15, 1995. Even if plaintiff were correct, the effect would be of no moment. As section 204(i) governs the extension of both disability and incapacitation pay, the analysis is the same.

able to frustrate Congress' efforts by refusing to grant informers who have complied with the statute any award. When the moiety statute was amended in 1986, no evidence was apparent that Congress had a different intent in mind, so judicial review remained intact.

*Doe* can be distinguished further. The Federal Circuit specifically held: "We therefore hold that section 1619 continues to provide Tucker Act jurisdiction over claims based on allegations that the claimant has satisfied the requirements of section 1619 and the Secretary has improperly withheld an award." 100 F.3d at 1583. The *Doe* analysis is inapposite to the instant case in that plaintiff already has received disability pay. The ABCMR found that plaintiff met the requirements of section 204 and made an award. Plaintiff would extend one step further the rationale espoused by the Federal Circuit.

Plaintiff is not contending that he met the requirements for disability pay and improperly was denied an award. Had that been the case, plaintiff's suit would rest on much firmer ground.[3] Rather, he is arguing the quantum of disability pay to which he is entitled. That distinction is important and ultimately precludes the court from entertaining plaintiff's claim. As the Federal Circuit stated in *Voge,* the Court of Federal Claims must examine carefully the extent of its jurisdiction over a particular claim. 844 F.2d at 779. Plaintiff, in effect, is asking the court to combine sections 204(g), 204(h), and 204(i) so as to permit adjudication of his claim.[4]

Because plaintiff has already received all of the relief to which he is entitled under sections of 204 other than 204(i)(2), the court cannot incorporate the statute as a whole for the purpose of obtaining jurisdiction. Although one provision of a statute is money-mandating, the entire statute is not necessarily money-mandating. For example, in *Huston v. United States,* 956 F.2d 259, 261 (Fed.Cir.1992), the court concluded that due to its discretionary language 5 U.S.C. § 5333(b) (governing the pay of General Schedule employees) was not money-mandating. In contrast, the court cited 5 U.S.C. § 5333(a), noting that this section utilized mandatory language. Plaintiff argues that the court did not state explicitly that section 5333(a) was money-mandating. Nonetheless, the significance of the court's comparison is clear, as the court below had refused jurisdiction on the ground that the provision at issue, section 5333(b), was not money-mandating.

Assuming, *arguendo,* that the other portions of section 204 on which plaintiff relies—sections 204(g) and 204(h)—are money-mandating, the court cannot obtain jurisdiction over the component of plaintiff's claim deriving from section 204(i)(2). In *Voge* the Federal Circuit provided a negative answer to the question of whether the Court of Federal Claims may "review the military's exercise of discretion when it has jurisdiction under the Tucker Act because of the mandatory monetary feature of the statute[ ]." 844 F.2d at 779–80. The impact of this holding is that the court may not go beyond the bounds of the mandatory monetary provisions of the statute to address the merits of ancillary claims.

*Voge* also cites with apparent approval *Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318 (1981),[5] for the proposition that "a statute that did not require payment until a discretionary decision was taken ... was not a money-mandating statute." *Voge* 844 F.2d at 779. Pursuant to section 204(i)(2), a claimant may be entitled to an award in excess of six months if the Secretary finds "that it is in

---

3. As plaintiff did receive six months of disability pay, the court expresses no opinion on the question of whether sections 204(g) and 204(h) are money-mandating.

4. In response to the court's order of October 24, 1997, the parties addressed *Holley v. United States,* 124 F.3d 1462 (Fed.Cir.1997). in which the Federal Circuit referred to section 204 in its entirety as money-mandating, although the case

itself arose under section 204(a). The court prefaced its October 24 order by noting that *Holley* was factually distinguishable from the case at bar. In its brief plaintiff has failed to put forth a persuasive argument that *Holley* renders a claim under section 204(i)(2) money-mandating.

5. *Adair* construed 37 U.S.C. § 313, which has since been repealed.

the interests of fairness and equity to do so [extend the payments beyond six months]." 37 U.S.C. § 204(i)(2). This language is distinct from that in sections 204(g) and 204(h), whereby a claimant "is entitled" to an award if certain criteria are satisfied. "Where the payment of money is wholly discretionary, a statute simply does not command the payment of money and there is no claim within our jurisdiction." *Allen v. United States,* 229 Ct.Cl. 515, 518 (1981).[6] Plaintiff's claim must be dismissed for lack of subject matter jurisdiction.

### 2. *Failure to state a claim upon which relief may be granted*

Defendant alternatively argues that the complaint must be dismissed for failure to state a claim upon which relief may be granted.[7] "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In view of the severity of granting such a motion, "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke,* 60 F.3d at 797. To avoid dismissal for failure to state a claim upon which relief may be granted, plaintiff's claim must be both within the court's jurisdiction and justiciable.

■ "Justiciability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993) (quoting *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962)). A claim is deemed justiciable "only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field

of competence.'" *Voge,* 844 F.2d at 780 (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). When a plaintiff seeks review of a military decision, the question of justiciability "is a particularly apt inquiry...." *Murphy,* 993 F.2d at 872.

■ The military is a unique environment governed by a different set of standards and rules than civilian organizations and must be treated as such. *See Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). "[J]udges are not given the task of running the Army.... Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Id.* Routine personnel decisions made by the Army frequently are determined to be nonjusticiable. "[J]udicial review is only appropriate where the Secretary's discretion is limited, and Congress has established tests and standards against which the court can measure its conduct." *Voge,* 844 F.2d at 780; *see Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990).

■ If Congress gives the military unlimited discretion in an area and the military implements procedural regulations, the court will hold the military to following the regulations it has established. *See Sargisson,* 913 F.2d at 921.

> A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion. The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.

*Murphy,* 993 F.2d at 873.

■ Plaintiff's claim, his right to receive incapacitation pay beyond the six-month stat-

---

6. While *Allen* construed an early version of the moiety statute, the legal principle enunciated remains intact in that a statute must be money-mandating to support jurisdiction in the Court of Federal Claims.

7. *See infra* note 9.

utory maximum, is based on 37 U.S.C. §§ 204(h)(1)(A) and (i)(2) and Army Regulations ("A.R.") 135–381, § 4–1(m), (n) (June 1, 1990). Section 204(h)(1)(A) states:

A member of a reserve component of a uniformed service who is physically able to perform his military duties, is entitled, upon request, to a portion of the monthly pay and allowances provided by law or regulation for a member of a regular component of a uniformed service . . . for each month for which the member demonstrates a loss of earned income from nonmilitary employment or self-employment as a result of injury, illness, or disease incurred or aggravated—

(A) in line of duty while performing active duty; . . . .

The statute also places a six-month limit as the maximum length of time an individual may receive incapacitation pay. 37 U.S.C. § 204(i)(2). The Secretary of the military branch at issue has the discretion to extend an individual's incapacitation pay beyond six months "if the Secretary determines that it is in the interests of fairness and equity to do so." *Id.* The Army Regulation accompanying this statute further expounds upon the discretionary nature of the Secretary's decision:

A soldier may be paid incapacitation pay for more than 6 months only with the approval of the Secretary of the Army (SA). The law permits additional payments only when in the opinion of the Service Secretary it is clearly in the interest of fairness and equity to do so.

A.R. 135–381 § 4–1(n).

Plaintiff asserts that the court does not require any special expertise or competence in military matters to review his request for an extension of incapacitation pay. He therefore argues that, despite the discretionary authority given to the Secretary of the Army, his case is justiciable. However, A.R. 135–381 § 4–1(n) recites: "Only the most

meritorious requests will be approved." Under this standard the court would require access to every other application for incapacitation pay beyond the six-month statutory limit to determine whether plaintiff's claim should have been granted. Without comparing plaintiff's claim to other claims received by the Secretary, the court cannot determine if it was "clearly in the interest of fairness and equity" to grant plaintiff's claim, which the Secretary did not find. This case is indistinguishable from *Sargisson* where the Federal Circuit stated: "A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit." *Sargisson,* 913 F.2d at 922. In the case at bar, as well as in *Sargisson,* the court lacks the expertise to substitute its judgment for that of the Army in situations wherein a comparison of claims is required.

No tests or standards appear in either 37 U.S.C. § 204(i)(2) or the accompanying Army Regulations for the court to apply in determining whether the Army acted impermissibly in denying plaintiff's claim. *See Murphy,* 993 F.2d at 873 (citing *Sargisson,* 913 F.2d at 922, and *Voge,* 844 F.2d at 780). Instead, the Secretary of the Army must exercise discretion to determine whether the interests of fairness and equity demand that plaintiff's request—in comparison to the merits of other requests for extended incapacitation pay received by the Army—is meritorious. In view of this discretion, his claim is nonjusticiable, and judicial review is inappropriate. *See Murphy,* 993 F.2d at 873 ("[J]udicial review is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct.") (quoting *Voge,* 844 F.2d at 780, and citing *Sargisson,* 913 F.2d at 922).[8]

Plaintiff also contends that, under the Administrative Procedure Act, all final agency

---

**8.** Plaintiff has also raised an argument based on *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979), that merits a brief discussion. In *Sanders* the Court of Claims held that a soldier who was seeking correction of his military records had brought a justiciable claim pursuant to a statute requiring review on a "fair and equitable basis." 219 Ct.Cl. at 302, 594 F.2d at 814. Plaintiff equates the "fair and equitable basis" standard in *Sanders* with the language articulat-

ed in 37 U.S.C. § 204(i)(2). Plaintiff's efforts to harmonize *Sanders* with the case at bar fail.

The correction board in *Sanders* had based its decision on an incomplete and inaccurate service record. Because of the defective service record, it was impossible for the board to consider plaintiff on a "fair and equitable basis." As the *Sanders* court noted: "[A] substantially complete and fair record is a necessary requirement of consid-

actions are subject to judicial review and the only exceptions are if a particular statute "preclude[s] judicial review" or if "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)(2) (1994). It is this court's determination that the second exception to judicial review, agency discretion, applies. Because this case is subject to dismissal on the ground that plaintiff's claim is nonjusticiable, it fails to state a claim upon which relief can be granted.[9]

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted. The Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

---

eration by a selection board." 219 Ct.Cl. at 302, 594 F.2d at 814. Consequently, a procedural defect existed and served to create a justiciable controversy. The court did not, however, review the question of whether the board's decision was made on a "fair and equitable basis." Thus, *Sanders* and the case at bar address entirely different issues.

Moreover, section 204(i)(2) provides expressly that the Secretary has the discretion to determine if fairness and equity require an extension of incapacitation pay. Conversely, the statute at issue in *Sanders* stated that, "appointments made under this subsection shall be made on a fair and equitable basis." 10 U.S.C. §§ 3442(c), 8442(c) (repealed). The different language in *Sanders* removes the Secretary's discretion and creates a statute amenable to judicial review.

**9.** Federal decisions governing dismissal of military pay claims on the basis of nonjusticiability are to a certain degree equivocal as to whether the dismissal is based on lack of jurisdiction. However, the Federal Circuit's predecessor, the United States Court of Claims, ruled that dismissal of a claim on the ground of nonjusticiability equated to a failure to state a claim upon which relief may be granted. *See Torres v. United States*, 225 Ct.Cl. 688, 689 n. 1, 1980 WL 99663 (1980). The decisions of the Court of Claims remain binding precedent unless overruled by the Federal Circuit sitting *en banc*. *See South Corp. v. United States*, 690 F.2d 1368, 1370–71 (Fed.Cir.1982).