**Ron L. FLUELLEN, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–5145.**

United States Court of Appeals, Federal Circuit.

Sept. 1, 2000

Guy J. Ferrante, King & Everhard, P.C., of Falls Church, Virginia, argued for plaintiff-appellant.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Assistant Director. Of counsel on the brief was Lt. Col. Ralph A. Bauer, Chief, Office of the General Counsel, Military Personnel Branch, United States Air Force, of Arlington, Virginia.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

Opinion for the court filed by Circuit Judge LOURIE. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

LOURIE, Circuit Judge.

Ron L. Fluellen appeals from the decision of the United States Court of Federal Claims granting the United States' motion for summary judgment that Fluellen's nonselection for promotion to major was not unlawful or invalid. *See Fluellen v. United States,* 44 Fed.Cl. 97 (1999). Because the Court of Federal Claims did not err in any respect, we affirm.

## BACKGROUND

Fluellen is a former captain in the Air Force Reserves. Five-member selection board panels considered but did not select him for promotion to major twice, in 1989

and 1991. Fluellen applied to the Air Force Board for Correction of Military Records ("AFBCMR") requesting, *inter alia*, that his nonselection decisions for promotion be set aside and that he be promoted to the grade of major as if he had been selected by the board. The AFBCMR held that Fluellen did not present sufficient relevant evidence of the existence of any probable material error or injustice to justify correction of his military records, *see* 10 U.S.C. § 1552(a) (1994); it thus denied his application. Because Fluellen was not selected for promotion twice, he was involuntarily discharged in 1992. *See* 10 U.S.C. § 632(a)(1) (1994).

Fluellen then appealed to the United States Court of Federal Claims, requesting that his nonselections and involuntary separation be set aside and expunged from his records, and that he be returned to active duty with back pay. Fluellen claimed that the promotion selection process violated several statutes, rules, and regulations, *viz.*, §§ 612(a)(3), 616(c), 617(a), and 12643(a) of title 10 of the United States Code, Air Force Manual ("AFM") 36–10 paragraph 4–9(a)(3)(a), and Department of Defense ("DoD") Directive 1320.9 paragraph D(1). Specifically, Fluellen claimed that §§ 616(c) and 617(a) and DoD 1320.9 did not permit the Air Force's selection board to use a paneling system and that sections 612(a)(3) and 12643(a) required that at least one reserve officer personally consider his promotion. Fluellen also claimed that the selection board's 1989 decision was invalid for two reasons: the senior rater who filled in his 1989 Performance Recommendation Form ("PRF") violated AFM 36–10 paragraph 4–9, and the senior rater considered an Officer Effectiveness Report ("OER") that was later voided by the AFBCMR.

Both parties cross-moved for summary judgment, and the court granted the government's motion and denied Fluellen's, holding that the Air Force's board paneling system was not illegal under the statute or DoD 1320.9, that a reserve officer was not required by statute to personally participate on Fluellen's panel, that the senior rater did not violate AFM 36–10, and that AFBCMR's decision that the senior rater's consideration of the later-voided OER was harmless error was supported by substantial evidence.

Fluellen timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

■ Summary judgment is appropriate if "[t]here is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." U.S.Ct. Fed. Cl. R. 56. We review a grant of summary judgment by the Court of Federal Claims *de novo* to determine whether the summary judgment standard has been correctly applied. *See Winstar Corp. v. United States,* 64 F.3d 1531, 1539 (Fed.Cir.1995) (*en banc* ); *aff'd,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

■ The first issue presented on appeal is whether the Air Force's selection board paneling system for determining reserve officer promotions is contrary to sections 612(a)(3), 616(c), 617(a), or 12643(a) of title 10, or DoD 1320.9. Fluellen argues that these provisions do not permit the board to convene in panels and require that at least one reserve officer personally consider the promotion of other reserve officers. The United States responds that, as held in *Small v. United States,* 158 F.3d 576 (Fed. Cir.1998), the Air Force's paneling system is consistent with §§ 616(c), 617(a), and DoD 1320.9, and that it is also consistent with §§ 612(a)(3) and 12643(a) because those sections only require that a reserve officer serve on the board as a whole.

We agree with the government that the use of the paneling system was not contrary to any of these provisions. Section 616 of title 10 of the United States Code provides in relevant part as follows:

§ 616. Recommendations for promotion by selection boards

\*　　\*　　\*　　\*　　\*　　\*

(c) A selection board . . . may not recommend an officer for promotion unless—

(1) the officer receives the recommendation of a *majority of the members of the board;* and

(2) a *majority of the members of the board finds* that the officer is fully qualified for promotion.

10 U.S.C. § 616(c) (1994) (emphasis added).

Section 617, in turn, provides as follows:

§ 617. Reports of selection boards

(a) Each selection board . . . shall submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing a list of the names of the officers it recommends for promotion and certifying (1) that the board has carefully considered the record of each officer whose name was furnished to it under section 615 of this title, and (2) that, *in the opinion of the majority of the members of the board,* the officers recommended for promotion by the board are best qualified for promotion to meet the needs of the armed force concerned (as noted in the guidelines or information furnished to the board under section 615(b) of this title) among those officers whose names were furnished to the selection board.

10 U.S.C. § 617(a) (1994) (emphasis added).

In *Small,* we held that the board's paneling system was not contrary to these statutory provisions. Specifically, we stated as follows:

Congress has not spoken to the issue of whether the selection board must conduct itself as a collective body. The statutory provisions do not contain any specific methodology that the selection board must use in carrying out its deliberative process. In addition, the parties direct us to nothing in the legislative history that would reveal Congress' in-

tent with regard to these issues and we have found no guidance in our review of the legislative history.

Given the facts before us, we also hold that the Air Force's interpretation of the statute is a permissible one. The statute does not require that a majority determination be based on a knowing review and conscientious consideration of each officer's record. Nothing in the plain language of the statute requires first-hand knowledge on the part of the deliberators of an officer's record. All that is required is a numerical showing that more than half of the board members approved or disapproved of the matter before them.

*Small,* 158 F.3d at 581. Our holding in *Small* is thus dispositive of Fluellen's arguments that use of the paneling system was unlawful.

■ We also agree with the government that use of the paneling system was consistent with DoD 1320.9, entitled "Management of Officers on the Active Duty List by Competitive Category." This directive states that "separate selection boards shall be convened for each competitive category and grade," DoD 1320.9 ¶ (D)(1) (1981), and that "a single board shall be convened to consider all eligible officers in the same grade and competitive category for promotion," DoD 1320.9 ¶ (D)(1)(a). These rules simply implement the statutory requirement that "[o]fficers in the same competitive category . . . compete among themselves for promotion." 10 U.S.C. § 621 (1994); DoD 1320.9 ¶ (A). They do not prohibit use of the selection board paneling system. Because there is no dispute that all of the eligible officers in Fluellen's grade and competitive category were considered together by the same selection board panel, the court correctly held that the Air Force complied with this directive.

■ We also agree with the government that the use of the paneling system did not conflict with §§ 612(a)(3) or 12643(a) of

title 10 of the United States Code. Section 612 provides in relevant part as follows:

§ 612. Composition of selection boards

\* \* \* \* \* \*

[ (a) ](3) When reserve officers of an armed force are to be considered by a selection board, the membership of the board shall include at least one reserve officer of that armed force, with the exact number of reserve officers to be determined by the Secretary of the military department concerned, in his discretion....

10 U.S.C. § 612(a)(3) (1994). Section 12643 similarly provides as follows:

Except as provided in section 612(a)(3) of this title and except for boards that may be convened to select Reserves for appointment in the Regular Army, Regular Navy, Regular Air Force, or Regular Marine Corps, each board convened for the appointment, promotion, demotion, involuntary release from active duty, discharge or retirement of Reserves shall include at least one member of the Reserves, with the exact number of Reserves determined by the Secretary concerned in his discretion.

10 U.S.C. § 12643(a) (1994). While both of these provisions plainly require that a selection board considering reserve officers include at least one reserve officer, neither addresses the compositional requirements of board panels. However, the legislative history fills in this gap quite clearly. The legislative history indicates that selection board *panels* are not required to have reserve officers. The House Report states in pertinent part as follows:

[A]lthough one reserve member is required on a promotion selection board, the total number of reserve members would be established pursuant to a regulation by the service secretaries conserve board.... *The committee also intends that the requirement for one reserve member apply only to the selection board as a whole and not to each panel or other administrative subdivision.*

H.R.Rep. No. 97–141, at 12, *reprinted in* 1981 U.S.C.C.A.N. 24, 35 (emphasis added). Moreover, §§ 612(a)(3) and 12643(a) expressly delegate to the secretaries of the military departments the discretion to determine the exact number of reserve officers on the board. In light of this clear legislative history and the clear delegation of authority given to the secretaries to determine the appropriate number of reserve officers on the board, the Air Force's system of not requiring a reserve member to participate on a selection board panel considering the promotion of reserve officers cannot be held to be unreasonable. Since there is no dispute that in this case the 1989 selection board had one reserve member and the 1991 board had two reserve members, the court correctly held that the Air Force complied with these statutory provisions.

■ The next issue for consideration is whether the 1989 selection board decision is invalid because it was based on a 1989 Promotion Recommendation Form ("PRF") that was allegedly generated in violation of AFM 36–10. Fluellen argues that this PRF is void because the senior rater who generated the PRF conducted an improper "mini-board" in violation of AFM 36–10. The government responds that the senior rater did not act improperly.

AFM 36–10 provides in relevant part as follows:

4–9. Responsibilities:

a. The Senior Rater:

(1) Reviews the ratee's record of performance before preparing the PRF.

(2) Will be knowledgeable of the ratee's most recent performance. *Information on an officer's most recent performance and performance-based potential, and suggestions for PRF recommendations from subordinate supervisors are encouraged.*

(3) Is solely responsible for evaluating each officer's record of performance and for either awarding PRF recommendations among officers or submitting officers to compete for aggregation or carry over "Definitely Promote" recommendations at an evaluation board.

*(a) While information and advice from subordinate raters are encouraged, senior raters will not convene boards or panels of officers to score records and generate a priority list of eligible officers.*

AFM 36–10 ¶ 4–9 (1988) (emphasis added). This regulation, by its own terms, "encourages" the senior rater to seek, from subordinate raters, information and advice about the performance and potential of the officer being rated. It stresses that it is, however, the ultimate responsibility of the senior rater to reach an evaluation decision, and that the senior rater cannot delegate the responsibility for generating a priority list to the subordinate raters.

The only evidence on this issue consists of two letters written by persons who had personal knowledge of the process by which Fluellen's 1989 PRF was generated. The first letter was written by Lt. Col. Hall, who supervised and evaluated Fluellen's work during the 1989 promotion cycle. The letter states in relevant part as follows:

> I was Captain Ronnie Fluellen's supervisor. In this capacity, I served on a CN mini-board for the 1989 major's promotion board. This board reviewed and scored the record of eligibles which gave an indication of relative standing to the Senior Rater. This mini-board ... was not binding on the Senior Rater.

J.A. at 245. The second letter was written by Col. O'Brien, Fluellen's senior rater. This letter states in pertinent part:

> I ... rank ordered the two separate eligible lists based upon my personal impressions regarding the individuals' demonstrated leadership and potential as well as readiness to assume the next

higher grade. Subsequently, I reviewed the records of all individuals to determine if they had shown proper career progression and performance achievements that reflected demonstrated potential for promotion. At that point, I determined the final ranking of the respective categories ... which resulted in my personal decision as to those receiving a "definitely promote" versus "promote."

> For junior officers, I have found that while I have known them all and have observed their potential, the impressions of their supervisors tend to be biased and inflated; that is, immediate supervisors tend to believe their subordinates are the best in the organization because they do not have the ability to expand their horizons to the entire eligible population—as senior raters can and must do. Since my background includes a tour in Personnel at HQ AFSC, I believe I am very attuned to those deserving promotion based upon demonstrated professionalism among a group of peers. I've also participated in several Command and MPC promotion boards which have broadened my experience. In order to sensitize supervisors who work for me (most of whom need to develop expertise in personnel management), I have found a useful technique to be to have them review the records of all eligibles to provide supervisors the opportunity to see how their subordinates compared to other eligibles with respect to performance-based potential. This provides valuable insight to them in clarifying the potential needed to be competitive for promotion. This approach also enabled me to more easily communicate with the supervisors on the rationale for my decisions. The results of this informal meeting in no way influenced or altered my prior decisions on "definitely promotes" and "promotes."

> \* \* \* \* \* \*

In summary, throughout this entire promotion process, I have maintained the

decision to award "definitely promotes" and "promotes" entirely to myself.

*Id.* at 246. Even viewing this evidence in the light most favorable to Fluellen, we agree with the government that he has not established that Col. O'Brien, the senior rater, violated paragraph 4–9 of AFM 36–10. It is clear from both letters that Col. O'Brien sought information and advice about Fluellen's performance and potential from Lt. Col. Hall and other subordinate raters; that was both contemplated and encouraged by the regulation. Col. O'Brien explained that he did so in part to train the supervisors to better evaluate the performance of their subordinates. Nothing in these letters suggests, let alone establishes, that Col. O'Brien improperly delegated to Lt. Col. Hall, or other subordinates, his responsibility to make the promotion decision. Although Lt. Col. Hall used the term "mini-board" in his letter, vague and conclusory labels are not controlling. The thrust and import of this regulation is that the senior rater not delegate his responsibility for making rating decisions to subordinate raters. Since the evidence does not even suggest that Col. O'Brien did so, we agree with the court's holding that Fluellen's 1989 PRF is not invalid for violation of paragraph 4–9.

■ The last issue before us is whether the 1989 selection board decision is invalid because Col. O'Brien, who gave Fluellen a "promote" recommendation rather than a "definitely promote" recommendation on his 1989 PRF, improperly considered a 1986 OER that was later voided by the AFBCMR. The AFBCMR concluded that, even if the OER was improperly considered, the removal of this one OER from the record would not have made any difference to Fluellen's prospects for promotion.

■ The trial court determined that the AFBCMR's decision was supported by substantial evidence. Fluellen argues that the presence of the 1986 OER in his file could have been a determining factor in Col. O'Brien's recommendation, and therefore also could have affected the selection board's nonselection decision. However, we will not review the AFBCMR's decision that any consideration of the voided OER would not have made a difference to Fluellen's prospects for promotion because such decisions are not appropriate for review by a court. A claim of error in a promotion decision presents a nonjusticiable controversy because there are no statutory or regulatory standards against which a court can review such a decision; it relates to a matter left to the discretion of the military. *See Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1996) ("The merits of a decision committed wholly to the discretion of the military decision [is] not subject to judicial review."); *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993); *Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990).

In *Sargisson,* the officer argued that the decision to release him was erroneous because his record of performance, which was submitted to a Reserve Officer Screening Board, contained an unfavorable OER that was subsequently voided by a correction board. Thereafter he was released from service. The correction board concluded that the removal of that one OER from the officer's record would not have made a difference in his retention. On review we held that "[t]here is no way a court can review that conclusion. A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit...." *Sargisson,* 913 F.2d at 922. The same rule was stated in *Murphy.* As in *Sargisson* and *Murphy,* there are no statutory or regulatory standards here against which we can review the AFBCMR's decision. As we stated in both of those opinions, courts lack the expertise needed to review reserve officer's records and make military retention decisions. To reverse the AFBCMR's decision would be "to second-guess the board's determination on no more than speculation." *Id.; see also Murphy,* 993 F.2d at 873.

## CONCLUSION

The procedures by which Fluellen was considered for promotion to major were in accordance with §§ 612(a)(3), 616(c), 617(a), and 12643(a) of title 10 of the United States Code, AFM 36–10 paragraph 4–9(a)(3)(a), and DoD 1320.9 paragraph D(1). Whether the 1989 selection board decision was invalid because the senior rater considered a 1986 OER that was later voided by the AFBCMR is nonjusticiable. The Court of Federal Claims' grant of summary judgment in favor of the government is therefore

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

Concern about maintaining an appropriate relationship between members of the regular military forces and members of the reserves pervades the record of the statutes here at issue. Congress acted to assure that, during the promotion/rating process, at least one reserve officer would participate in the rating of any reserve officer. That is, reserve officers competing for retention and promotion would not be rated by a body consisting entirely of non-reservists.

The statutes require that at least one reserve officer must be present on the selection board that rates a reserve officer. The panel majority rules that this requirement is satisfied when, as in this case, one reserve officer is included in the forty-person body from which rating panels are drawn, and that it was unnecessary for the five-person panel that rated Captain Fluellen to include the one reserve officer. I can not agree.

Relevant statutes include (with emphases added):

**10 U.S.C. § 612(a)(3).** When reserve officers of an armed force are to be considered by a selection board, *the membership of the board shall include at least one reserve officer of that armed force,* with the exact number of reserve officers to be determined by the Secretary of the military department con-

cerned, in his discretion, except that in the case of a board which is considering officers in the grade of colonel or brigadier general or, in the case of officers of the Navy, captain or rear admiral (lower half), no reserve officer need be included if there are no reserve officers of that armed force on active duty in the next higher grade who are eligible to serve on the board.

The legislative history of this statute includes congressional observation of promotion difficulties that had been encountered by reserve officers when there was no reserve participation in the selection process:

The bill, as reported by the committee, would require *at least one reserve officer on a selection board convened to consider a group of officers that includes reserve officers.* The committee was disturbed by promotion difficulties encountered in the past as the result of constituting boards without reserve officers *as required under law* and wishes to make very clear to the Department of Defense that it does not expect such procedures inconsistent with law to occur in the future.

H.R.Rep. No. 96–1462, at 42 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333, 6373.

Section 12643 (previously § 266) contains the same requirement when reservists are evaluated for other purposes:

**10 U.S.C. § 12643(a).** Except as provided in section 612(a)(3) of this title and except for boards that may be convened to select Reserves for appointment in the Regular Army, Regular Navy, Regular Air Force, or Regular Marine Corps, *each board convened for* the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of *Reserves shall include at least one member of the Reserves,* with the exact number of Reserves determined by the Secretary concerned in his discretion.

The courts well recognized the statutory purpose whereby Congress attempted to

protect reserve officers against bias by mandating reserve officer participation in decisions affecting reservists:

> The Reserve Act's legislative history reveals a congressional intent to establish *selection boards that would protect Reserve officers* against whatever generic bias may exist against them in selection boards composed entirely of regular Army officers. The history also makes clear that Congress decided to attempt to remedy this bias itself by imposing nondiscretionary institutional safeguards designed to ensure Reserve participation in decisions affecting Reserve members.

*Dilley v. Alexander,* 603 F.2d 914, 922–23 (D.C.Cir.1979); *see Sargisson v. United States,* 913 F.2d 918, 923 (Fed.Cir.1990) ("Section 266(a) was enacted because 'Congress was concerned that the military establishments (with their significant sector of Regular officers) not discriminate against Reserves' ") (quoting *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984, 994 (Ct.Cl.1979)). In *Doyle* the court discussed 10 U.S.C. § 266(a) and concluded that "Reserve members of the selection boards were to be there to minimize the chance that conscious or unconscious bias against Reserves, as such, would enter into the selection process."

The panel majority, ignoring statute and precedent, now holds that it suffices if there is one reservist in the forty-member pool of officers from which the rating board is constituted. It is not disputed that these bodies operated through essentially autonomous five-member panels, concerned by taking the panel members from the forty-member board. In 1989 there was only one reserve officer among the forty, and in 1991 there were two. It is not disputed that no reservist served on the panels that were convened to consider the group that included Captain Fluellen. I can not agree that the statute is met with by such a distorted procedure.

The majority stresses a statement in the legislative history that "the requirement for one reserve member apply only to the selection board as a whole and not to each panel or other administrative subdivision." H.R.Rep. No. 97–141, at 12, *reprinted in* 1981 U.S.C.C.A.N. 24, 35. However, this is not inconsistent with the statutory requirement that when a reserve officer is being evaluated, a reserve officer must participate. The statute itself contemplates that not every panel will be concerned with reserve officers, and provides that reserve officers need not participate in the selection of only regular officers, or when reserve officers are being selected for appointment to the Regular military. *See* 10 U.S.C. § 612(a)(3), 12643(a) (requiring reserve participation when reserves are under consideration); *see* H.R.Rep. No. 97–141, at 3, *reprinted in* 1981 U.S.C.C.A.N. 24, 26. However, when a reserve officer is being evaluated, a reserve officer must be included in those doing the evaluation. I must, respectfully, dissent from my colleagues' contrary ruling.