**SPHERIX, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**ReserveAmerica Holdings, Inc. Intervenor.**

No. 03–2371C.

United States Court of Federal Claims.

Nov. 3, 2003.

---

Eric James Marcotte, Washington, D.C., attorney of record for plaintiff.

Lauren S. Moore, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant. David M. Cohen, Director, and William F. Ryan, Assistant Director.

Daniel N. Hylton, U.S. Department of Agriculture, National Forest Service, of counsel. Alton Woods, U.S. Department of the Interior, National Park Service, of counsel.

Robert S. Metzger, Washington, D.C., attorney of record for intervenor, ReserveAmerica Holdings, Inc., and Mary Ita Snyder, of counsel.

## OPINION and ORDER

FUTEY, Judge.

This bid protest initially came before the court on plaintiff's motion for a preliminary injunction, but at the outset, jurisdiction was called into question. This opinion and order addresses plaintiff's assertion of jurisdiction, defendant's response and cross-motion to dismiss, and intervenor's response. Plaintiff argues that the National Forest Service (Forest Service) of the United States Department of Agriculture (USDA) has violated federal procurement statutes and regulations by awarding, without competition, a contract modification to provide electronic reservation services for national parks and other recreational sites. Defendant and intervenor contend that the modification conforms to law and regulation pursuant to the Secretary of Agriculture's (Secretary) authority under 41 U.S.C. § 253(c)(7). Defendant and intervenor further assert that this court is without jurisdiction to review the Secretary's action. This opinion and order is concerned only with the matter of jurisdiction and follows briefing and oral argument held on October 29, 2003.

## Factual Background

Plaintiff, Spherix, Inc., and intervenor, ReserveAmerica Holdings, Inc., are both contractors supplying services to develop, operate, and maintain electronic reservation systems serving federal recreational facilities. Various departments of the government have historically had separate systems which were serviced by separate contracts.

In 1995, the USDA, the United States Department of the Interior (DOI), and the United States Army Corps of Engineers (ACE) agreed to establish a single reservation system, the National Recreation Reservation System (NRRS), to service the facilities under their authority.[1] In 1996, however, due to unique needs including servicing tours and tickets for historic property such as the Washington Monument and Independence Hall, the National Park Service (NPS), an agency within the DOI, opted out of the agreement to pursue a central reservation system. The Bureau of Land Management (BLM), another DOI agency, maintained an option to join at a later date.[2]

In recent years, intervenor was awarded a contract to service DOI and ACE reservation operations and plaintiff was awarded contracts for NPS sites. The systems and companies have operated independently and have occasionally challenged each other in the bid protest process as their various contracts expired and came up for renewal or resolicitation.[3] Intervenor now operates the NRRS, which provides reservation services for more than 1900 USDA and ACE campgrounds, cabins, and other facilities.[4] Plaintiff's contract covers reservation services for at least 30 NPS parks and tour ticketing at five NPS facilities.[5]

Plaintiff asserts that it settled a protest it filed over the award of the NRRS contract on the condition that NPS reservation services would continue to be awarded separately. In fact, a solicitation for NPS services was solicited in 2002. Plaintiff submitted a proposal for the NPS services, but the solicitation was canceled at the request of the Office of Management and Budget (OMB), which expressed the need to consolidate NPS facilities into the NRRS as part of the President's E–Government Recreation One–Stop Initiative.[6] NPS sites were then added to the NRRS, serviced by intervenor, prompting a protest with the General Accounting Office (GAO) by plaintiff. The protest was dismissed by the GAO and plaintiff filed suit in this court to enjoin the consolidation of the NPS sites with the NRRS.[7] The case was voluntarily dismissed, however, when it became clear that the NPS sites presently serviced by plaintiff would not be consolidated with the NRRS and that a new solicitation would be offered in the spring of 2004 for the NRRS, giving both parties the opportunity to bid.[8]

The present suit was filed after defendant moved to consolidate into the NRRS 17 facilities not previously a part of either intervenor's or plaintiff's current contracts, including NPS and BLM sites. A modification of intervenor's contract was required to add the new sites to the NRRS, which plaintiff asserts is a modification beyond the scope of the original contract and provides intervenor with an "improper competitive advantage in connection with the promised fair competition for a consolidated reservation system"[9] to be held in 2004.

A sole-source modification commenced with a June 24, 2003, written determination

1. Defendant's Response To Plaintiff's Memorandum In Support Of Its Request For A Preliminary Injunction And Cross–Motion To Dismiss For Lack Of Jurisdiction (Def.'s Resp.) at 3. Plaintiff asserts that the date of the NRRS agreement was 1996. See Plaintiff's Memorandum In Support Of Its Motion For A Preliminary Injunction (Pl.'s Memo) at 4.

2. Def.'s Resp. at 4.

3. *Id.* at 4–5.

4. *Id.* at 4.

5. *Id.* at 5.

6. *Id.* at 5–6 and Appendix 1–3 (memo from OMB Director Mitchell E. Daniels).

7. *Spherix, Inc. v. United States,* No. 03–1170C (May 9, 2003).

8. Pl.'s Memo, Exhibit 8.

9. Pl.'s Memo at 11.

by the Secretary of Agriculture, Ann M. Veneman, pursuant to 41 U.S.C. § 253(c)(7), supported by findings, that "it is in the public interest to award a modification non-competitively to [intervenor] to integrate a portion of the Department of the Interior recreation reservation requirements into the NRRS with those of the USDA Forest Service and the U.S. Army Corps of Engineers." [10] As required by the statute, the Secretary notified Congress of her determination by a July 1, 2003, letter and waited more than a month before authorizing work to begin under the modified contract. That work began on August 27, 2003, and some of the added facilities were to be ready to accept reservations via the Internet on Wednesday, October 22, 2003. By agreement of the parties, the launch of the new service was delayed until November 5, 2003.

### Discussion

The court has jurisdiction under 28 U.S.C. § 1491(b)(1) to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals ... or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." When adjudicating bid protests, "the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5," id. at § 1491(b)(4), which states that agency actions may be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law .... " 5 U.S.C. § 706(2)(A).

▮▮▮ There is a presumption of judicial review of agency action. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). To preclude judicial review, the court must find "clear and convincing evidence" of congressional intent to do so. *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 778, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). Agency actions committed to agency discretion by law, however, are nonjusticiable. *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). The discretion may be found in an explicit term of a statute or when "the stat-

ute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.*

The Competition in Contracting Act (CICA) establishes procedures and requirements for "[p]rocurement through full and open competition." 41 U.S.C. § 253(a). Section 253(c) establishes procedures for the use of noncompetitive awards under certain circumstances, including when the head of an agency determines that noncompetitive procedures are in the public interest. *Id.* at § 253(c)(7).

Plaintiff argues that such determinations must be evaluated according to the § 706(2)(A) "arbitrary and capricious" standard. Defendant argues that the court is without jurisdiction because the determination is committed to agency discretion by law. This issue has been addressed by the United States District Court for the District of Columbia, *Varicon Int., et al. v. Office of Personnel Management*, 934 F.Supp. 440, 443–44 (D.D.C.1996), which held that agency action under § 253(c)(7) was nonreviewable. The statute has not, however, been addressed directly by this court. Relying on *Varicon*, this court stated without additional comment that 10 U.S.C. § 2304(c)(7), which governs military procurement using identical language to § 253(7) was nonreviewable. *Northrop Grumman Corp. v. United States*, 46 Fed.Cl. 622, 625 (2000). Section 2304(c)(7), however, was not the primary issue of that case. The present case, therefore, offers the first opportunity to squarely address the court's jurisdiction to review an agency head's determination of public interest pursuant to § 253(c)(7).

An executive agency may use procedures other than competitive procedures when:

the head of the executive agency (A) determines that it is necessary in the public interest to use procedures other than competitive procedures in the particular procurement concerned, and (B) notifies the Congress in writing of such determination

---

10. Def.'s Resp. at Appendix 5–9.

not less than 30 days before the award of the contract.

41 U.S.C. § 253(c)(7).

Plaintiff argues that the Federal Acquisition Regulations (FAR) establishes rules implementing § 253(c)(7), specifically 48 C.F.R. § 6.302–7(c), which requires that the determination by the head of the agency be supported by written findings. Section 6.302–7(c)(1) states, in pertinent part, that "[a] written determination to use [noncompetitive procedures pursuant to § 253(c)(7)] shall be made in accordance with subpart 1.7." Subpart 1.7 further requires a determination and finding, which "shall set forth enough facts and circumstances to clearly and convincingly justify the specific determination made," including "findings that detail the particular circumstances, facts, or reasoning essential to support the determination." 48 C.F.R. § 1.704.

■ Plaintiff further argues that § 1.704 establishes by regulation a standard of review limiting the Secretary's discretion under the statute. *The general rule is that an agency is required to follow its own regulations.* Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), holds that "regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature." *Id.* at 372, 77 S.Ct. 1152. The United States Court of Appeals for the Federal Circuit has explained that "once the Secretary promulgated regulations and instructions and made them the basis [for his decision], his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all." Sargisson v. United States, 913 F.2d 918, 921 (Fed.Cir.1990). This is the rule even where "the statute does not place

any procedural or substantive limitations on the Secretary's decision." *Id.*

### I. *Webster v. Doe*

■ Defendant nevertheless contends that § 253(c)(7) " 'fairly exudes deference' to the head of an agency, and 'provides no objective criteria by which the court can assess whether the awarding of [a] sole source contract is in the public interest; instead it leaves this decision to' " agency discretion.[11]

Intervenor makes a substantial argument that § 253(c)(7) "differs from the other statutory exceptions to the requirement of full and open competition in several material respects." [12] These include "the phrasing that requires only a 'determination' but not the preparation of 'findings' or 'justification,' the limitation of the authority to the level of an agency head, and the vesting of review in Congress." [13] Relying on Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), intervenor argues that "the language of this CICA provision manifests the same indicia of nonreviewability as the section of the National Security Act at issue." [14] Intervenor concludes that, just as in *Webster,* discretion is clear because "it is not when noncompetitive procedures are actually necessary to the public interest but, rather, when the agency head determines that they are so that the statute authorizes the invocation of the CICA public interest exception." [15]

*Webster* states that whether judicial review of an agency action is precluded "requires careful examination of the statute on which the claim of agency illegality is based." *Id.* at 599, 108 S.Ct. 2047. Section 102(c) of the National Security Act of 1947, 61 Stat. 498, provides that the Director of the Central Intelligence Agency (CIA) may "in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United

---

**11.** Def.'s Resp. at 22 (quoting *Varicon,* 934 F.Supp. at 443).

**12.** Defendant Intervenor ReserveAmerica's Response In Opposition To Plaintiff Spherix's Challenge To The Use Of Noncompetitive Procedures Pursuant to 41 U.S.C. § 253(c)(7) (Intervenor's Resp.) at 6.

**13.** *Id.*

**14.** *Id.* at 9.

**15.** *Id.*

States." 50 U.S.C. § 403(c). The United States Supreme Court ultimately held, upon consideration of the language and structure of that statute, that the Director's decision to terminate an employee was nonreviewable by the Court. *Id.* Among defendant's and intervenor's principal arguments is that the term "deems" at issue in *Webster* and the term "determines" in 41 U.S.C. § 253(c)(7) equally demonstrate Congressional intent to preclude the statute from judicial review.

Reliance on *Webster*, however, is misplaced. The position of defendant and intervenor depends on a narrow reading of *Webster* and fails to appreciate the greater context of the law guiding preclusion of judicial review. An overview of the context makes it clear that *Webster*, although a helpful guide, is not dispositive of the present case.

As explained above, the court has initial jurisdiction to hear bid protests and to review agency action under standards established by § 706(2)(A) of the APA. 28 U.S.C. § 1491(b). Section § 701(a) of the APA creates a strong presumption that agency actions are reviewable, and defendant bears a heavy burden to show otherwise. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). It is noted that it has been questioned whether § 701 applies to cases arising under 28 U.S.C. § 1491(b), but nevertheless "this court generally is required to apply a comparable standard in determining whether a given issue is justiciable." *PGBA, LLC. v. United States*, 57 Fed.Cl. 655, 658–59 (2003). Against this general backdrop, judicial review of a particular statute or action may be precluded where is can be determined by "clear and convincing evidence" that Congress intended such preclusion. *Lindahl*, 470 U.S. at 775, 105 S.Ct. 1620.

By the terms of § 701(a), such preclusion is intended where (1) the statute precludes judicial review; or (2) when agency action is committed to agency discretion by law. Either of these tests may be proved by the language or structure of the statute. *Webster*, 486 U.S. at 599, 108 S.Ct. 2047. Although intervenor makes an argument for

preclusion based on the broader structure of § 253, which is addressed below, the arguments of defendant and intervenor regarding *Webster* are intended to support the premise that by the terms of § 253(c)(7) the Secretary's determination of the public interest is committed to agency discretion by law.[16] This discretion is nonreviewable, so the argument goes, because an agency action is committed to discretion by law where Congress has provided no meaningful standard of review. *Overton Park*, 401 U.S. at 410, 91 S.Ct. 814; *Chaney*, 470 U.S. at 830, 105 S.Ct. 1649.

As *Service* and *Sargisson* make clear, however, even if there is no statutory limit on the Secretary's discretion, once regulations have been promulgated they are binding on the Secretary, and her action is subject to judicial review to determine compliance with those regulations. *Webster* does not hold otherwise.

Section 253(c)(7) and the statute in *Webster* may have been drawn in similar terms, although it is fairly debatable whether "deem" has the same meaning as "determine," or whether the explicit phrase authorizing the Director's action "in his discretion" eviscerates any alleged equivalence. Even accepting that the statutes are similar, the argument by defendant and intervenor ignores key facts and sets aside the broader context establishing a relationship between statute and regulation. It is simply a non sequitur to conclude that because agency action under the statute in *Webster* was held nonreviewable, so to is agency action under § 253(c)(7).

The court noted in *Webster*:

We understand that [the government] concedes that the Agency's failure to follow its *own regulations* can be challenged under the APA as a violation of [the statute] . . . . The Court of Appeals, however, found that the [agency's] own regulations plainly protect the discretion granted the Director by [the statute], and that the regulations "provid[e] no independent source of procedural or substantive protections."

---

**16.** Def's Resp. at 18–19; Intervenor's Resp. at 7.

*Webster,* 486 U.S. at 603 n. 7, 108 S.Ct. 2047 (citations omitted).

In fact, the regulations related to *Webster* state that the Director of the CIA may terminate an employee *"immediately and without regard to any suggested procedural steps* when the Director of the Central Intelligence Agency considers it necessary or advisable in the interests of the United States."[17] The regulation not only protects the discretion of the Director, but mirrors the statute in question, making more explicit the broad discretion available to the Director. This language eliminates any suggestion that the regulation provides an "independent source of procedural or substantive protections" limiting the discretion afforded by statute. *Id.* at 1520.

The implementation of § 253(c)(7) is guided by 48 C.F.R. § 6.302–7(c), requiring that the Secretary's determination of public interest include a determination and finding setting "forth enough facts and circumstances to clearly and convincingly justify the specific determination made," including "findings that detail the particular circumstances, facts, or reasoning essential to support the determination." 48 C.F.R. § 1.704. In striking contrast to the regulations in *Webster,* 48 C.F.R. § 6.302–7(c) does not protect the Secretary's discretion but limits it to the extent that her determination must be made only upon a clearly convincing justification.

## II. *The Structure Of § 253*

Intervenor makes an additional argument based on the "structure of CICA," which purportedly "precludes judicial review of a determination of public interest by the head of an executive agency."[18] Unlike the six other exceptions to the general CICA requirement to use competitive procedures for procurement, "the statute contains no requirement that the head of an agency make a 'finding' or draft a justification or written decision explaining 'why' an award is in the public interest."[19] Intervenor continues, arguing:

[T]he only procedural prerequisite set forth in the statute is that the agency head provide written notification to Congress of his or her intention to invoke the exception thirty days prior to awarding a contract based on the determination. The intent of Congress is clear: the agency head can determine when a contract action without competition is in the public interest, and a review of the Secretary's determination is vested in Congress, which has thirty days in which to consider the action and in which to persuade or direct the Secretary not to make the award.[20]

Congress may at any time reserve to itself the review of agency action under CICA, thereby precluding judicial review. Intervenor contends that the alleged fact that "Congress did not intend for courts to review [the Secretary's] power under the APA is indicated by the unique applicability of the report and wait process to the 'public interest' exception." The fact that Congress wants to be notified of actions by agency heads that trigger the § 253(c)(7) public interest waiver does not, however, clearly and convincingly show Congressional intent to preclude judicial review. Such an intent should be "fairly discernible," *Casey,* 796 F.2d at 1515 (rev'd on other grounds) (citations omitted), which it is *not:* an express requirement to report to Congress does not imply, let alone mandate, preclusion of judicial review.

Intervenor further argues that 41 U.S.C. § 253(f)(1) provides a structural clue to Congress' alleged intent to preclude judicial review of action taken under the public interest exception. Section 253(f) establishes a series of procedures for contracting officers to "justify the use of" noncompetitive awards or procedures. These procedures are waived, however, by § 253(f)(2)(c) "in the case of a procurement permitted by subsection (c)(7)."

Section 253(f)(2)(c) does indicate substantial discretion committed to the head of an agency. By its terms, however, § 253(f)(2)(c) only waives the justification requirements

17. CIA Regulation HR 20–27m (quoted in *Doe v. Casey,* 796 F.2d 1508, 1519 (D.C.Cir.1986)) (emphasis added).

18. Intervenor's Resp. at 10.

19. *Id.*

20. *Id.*

**358**

written in § 253(f)(1), and could not waive the § 6.302–7 procedures guiding the implementation of § 253(c)(7).

If it were not for the regulations promulgating limits on the Secretary's discretion, the argument that the structure or language of § 253(c)(7) shows that the public interest determination is committed to agency discretion by law would have greater force. Absent regulations, it might be more persuasive that the phrase "in the public interest" provides no meaningful standard of review. The court makes no finding at this time as to whether the "public interest" standard established by § 253(c)(7) is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830, 105 S.Ct. 1649.

There is nothing in the language or structure of the statute that follows from intervenor's argument, however, to bar the promulgation of regulations limiting the Secretary's discretion. When regulations have been promulgated, *Service* and *Sargisson* explain that it is the duty of the court to review agency action for compliance with its own regulations. By establishing procedures that require the Secretary to adopt a written finding setting out facts and circumstances that clearly and convincingly justify her determination of the public interest, § 6.302–7 does provide a meaningful standard of review.

### Conclusion

For the above-stated reasons, the court holds that it has jurisdiction to decide whether the Secretary of Agriculture's determination that it is necessary in the public interest to make a sole source modification to intervenor's contract is clearly and convincingly justified, as required by 48 C.F.R. § 6.302–7, notwithstanding the discretion provided by 41 U.S.C. § 253(c)(7)(A).

Accordingly, defendant's cross-motion to dismiss plaintiff's complaint is hereby DENIED. Defendant is ordered to file the administrative record by Thursday, November 6, 2003. Defendant shall respond to plaintiff's motion for preliminary injunction by Thursday, November 6, 2003, including whether, based on the administrative record,

the Secretary's determination of the public interest is clearly and convincingly justified. Intervenor may also respond by Thursday, November 6, 2003. Plaintiff may reply by Wednesday, November 12, 2003.

The parties agreed to postpone the finality of the system concerning the locations under protest by not allowing ReserveAmerica Holdings, Inc. to take reservations via the Internet for said locations until after Wednesday, November 19, 2003.

IT IS SO ORDERED.