### FILTRATION DEVELOPMENT CO., LLC, Plaintiff,

v.

### The UNITED STATES, Defendant.

No. 03–2835C.

United States Court of Federal Claims.

Feb. 3, 2004.

diction of this court, their reasoning applies with equal force to intervention of right under Rule 24(a).

Robert S. Metzger, Washington, D.C., attorney of record for plaintiff, and Bryan Arnold and Mary Ita Snyder, of counsel.

David A. Harrington, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant. David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director.

Mike Lonsberry, U.S. Department of the Army, of counsel.

## OPINION

FUTEY, Judge.

This post-award bid protest case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. From the onset, defendant argued that the court need look no further than to principles of justiciability to resolve this controversy. The issues raised within are of paramount importance, as they concern not only the next rotation of military equipment which is scheduled to arrive in Iraq in the spring of 2004, but also because they define the parameters in which the military may exercise its discretion in invoking the "unusual and compelling urgency" exception to the Competition Contracting Act's (CICA) requirement of full and open competition. Issues of national defense and national security permeate, and will continue to permeate, the issues addressed at all stages of this litigation.

For purposes of this motion, defendant concedes that plaintiff would be able to sub-

stantiate both its CICA and Organizational Conflict of Interest (OCI) claims.[1] Defendant maintains, however, that the United States Army's (Army) decision to procure a set number of engine inlet barrier filters for use on UH–60 Blackhawk helicopters in Operation Iraqi Freedom is purely a military question and, therefore, nonjusticiable. Defendant avers that the court should defer to the military in matters pertaining to equipping the armed forces. Defendant also contends that there are no tests or standards for the court to apply in order to ascertain the number of engine filters that are required to sustain the operation in Iraq. On the other hand, plaintiff maintains that this court possesses the authority to review alleged CICA and OCI violations. Plaintiff contends that the Army did not solicit proposals from the maximum number of contractors as practicable. Further, plaintiff avers that the Army did not limit the procurement to "the minimum quantity needed to satisfy the immediate urgent requirement."[2] Plaintiff also asserts that it has carefully crafted the relief it seeks so as not to interfere with the military's current operations.

*Factual Background*

Sikorsky Aircraft Company (Sikorsky) was awarded a sole-source contract, under which it is responsible for designing, developing, and manufacturing the UH–60 Blackhawk helicopter.[3] Although the parties are in disagreement as to the exact timing of the revelation, the Utility Helicopter Project Management Office (UHPMO) became aware that the engines propelling the UH–60 Blackhawk helicopters were quickly deteriorating due to the excessive ingestion of sand particles. In July 2003, to commence the development and selection of appropriate preventive measures, UHPMO directed Sikorsky to conduct an engine filtration trade study.[4] The trade study contemplated that Sikorsky would evaluate, in addition to the two concepts chosen at its discretion, a filter concept developed by Aerospace Filtration Systems (AFS), a "division" of Westar Corporation (Westar).[5]

According to defendant, in August 2003, the Army was confronted with a situation in which the demand for replacement engines increased, the costs attendant with their replacement mounted, and there was a lack of engines to meet the demand.[6] Shortly thereafter, in light of the foregoing considerations, the trade study was suspended and Sikorsky was directed to incorporate and qualify AFS's filter concept on a sole-source basis. Sikorsky was required to finalize the design by mid-October 2003 and secure an airworthiness release by March 2004.

Invoking the "unusual and compelling urgency" exception, 10 U.S.C. § 2304(c)(2), and implementing Federal Acquisition Regulations (FAR), 48 C.F.R. § 6.302–2, the Army procured 183 "A kits" and 150 "B kits" without full and open competition. The Justification and Approval (J & A) executed on November 5, 2003, provided that the United States Army Aviation Missile Command "propose[d] to acquire, utilizing an acquisi-

1. Defendant's Reply In Support Of Its Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted at 2; see also Transcript of Oral Argument (Tr.) at 6–7.

2. Plaintiff's Response In Opposition To Defendant's Motion To Dismiss (Pl.'s Resp.) at 15–16 & n. 27 (citing *Matter of: Signals & Sys., Inc.*, B–288107, 2001 CPD ¶ 168, 2001 WL 1150705, at *9, 2001 U.S. Comp. Gen. LEXIS 149, at *26 (Sept. 21, 2001)).

3. Complaint (Compl.) Exhibit (Ex.) 2, at 1.

4. Contract No. DAAH23–02–D–000–0148.

5. Compl. ¶¶ 1, 23, 45. The source of plaintiff's allegation of an OCI violation appears to derive from Westar's affiliation with AFS. Westar was

awarded an Omnibus 2000 contract in the year 2000. Generally speaking, Westar's obligations under the contract consisted of providing a "broad range of technical, programmatic and logistics advisory and assistance support services." *Id.* ¶ 15 (quoting Omnibus 2000 Handbook). Within these broad categories of responsibility, Westar dispensed advice concerning barrier filters and inlet particle separators. *Id.* ¶¶ 17–19. Plaintiff, therefore, concludes that both OCI regulations and the terms of the Omnibus 2000 contract precluded Westar or its affiliates from supplying engine barrier filters for the UH–60 Blackhawk helicopter. *Id.* ¶ 20.

6. *Id.* Ex. 1, at 1–2; see also Defendant's Motion To Dismiss For Failure To State Claim Upon Which Relief Can Be Granted (Def.'s Mot.) Appendix (App.) A at 2.

tion method other than full and open competition, 240 [engine inlet barrier filter] Desert Kits."[7] The J & A also noted, *inter alia,* that: 1) the kits would substantially reduce engine deterioration, and 2) Sikorsky was the only contractor that could complete the assignment within the requisite time frame.[8]

To place the significance, or lack thereof, of the discrepancy between the number of kits ordered and the number of kits referenced in the J & A into context, a brief discussion of the manner in which the kits are used is warranted. At an initial glance, it appears that the total number of kits ordered (333) exceeds the number referenced in the J & A (240). The "A kits" and the "B kits," however, are utilized in tandem. Each helicopter is first fitted with an "A kit," which serves a dual purpose: 1) it is the hardware to which the filter itself is mounted, and 2) it permits monitoring of the filter system. The "B kit" is the actual interchangeable filter. The so-called filtration system, therefore, requires both an "A kit" and a "B kit."[9]

Plaintiff, Filtration Development Company, LLC, had met with Army officials on several occasions to express its interest in providing engine filters. Despite the meetings and subsequent phone calls and emails, its efforts were to no avail. Plaintiff filed suit in this court on December 18, 2003. The court held a telephonic conference the next day and the matter was placed on an expedited schedule. Defendant filed its motion to dismiss on December 30, 2003. Plaintiff responded on January 13, 2004, and defendant replied on January 16, 2004. Pursuant to the parties' request, the court held oral argument on January 21, 2004. The case is, therefore, appropriate for resolution.[10]

### Discussion

This court's bid protest jurisdiction is set forth in the Tucker Act, which provides:

[T]he Unites [sic] States Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement.

28 U.S.C. § 1491(b)(1). In 1996, Congress enacted the Administrative Disputes Resolution Act, Pub.L. No. 104–320 § 12, 110 Stat. 3870, 3874–75 (1996), which expanded the court's bid-protest jurisdiction to hear both pre-award and post-award challenges. When adjudicating bid protests, "the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5," 28 U.S.C. § 1491(b)(4), which states that agency actions may be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C. § 706(2)(A). The court is empowered to "award any relief that [it] considers proper." *Id.* at § 1491(b)(2). The court's jurisdiction over the subject matter is not at issue in this case.

Whether this court possesses jurisdiction to adjudicate a claim, however, is a matter separate and distinct from whether the claim is justiciable. *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993). A claim is justiciable where "the duty asserted can be judicially identified and its breach judicially determined, and ... protection for the right can be judicially molded." *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Stated another way, "judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." *Murphy,* 993 F.2d at 873 (citing *Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990)); see also *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988). A determination of justiciability is also dependent on the court's "ability to supply relief." *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995) (quoting *Murphy,* 993 F.2d at

---

7. Def.'s Mot.App. A at 1.

8. *Id.* at 1–3.

9. Tr. at 13–14.

10. Pursuant to RCFC 24(a)(2), Sikorsky was given an opportunity to intervene in this matter, but declined to do so.

872); see also *Gilligan v. Morgan*, 413 U.S. 1, 5–12, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

The court is also cognizant of the plethora of authority mandating judicial deference in the area of military affairs. *North Dakota v. United States*, 495 U.S. 423, 443, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) ("When the Court is confronted with questions relating to ... military operations, we properly defer to the judgment of those who must lead our Armed Forces in battle."); *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the Army."); *Murphy*, 993 F.2d at 872 ("Justiciability is a particularly apt inquiry when one seeks review of military activities."); *Voge*, 844 F.2d at 779 ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense."). It is against this backdrop of intertwining concepts of justiciability and deference to the discretionary decisions of military officials that the court proceeds with its analysis.

These two concerns undoubtedly cause the court to proceed with caution; they do not, however, categorically preclude review of discretionary military decisions. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has made clear that "[n]ot every claim arising from a military decision presents a nonjusticiable controversy ...." *Adkins*, 68 F.3d at 1323; see also *Gilligan*, 413 U.S. at 12 & n. 16, 93 S.Ct. 2440. The courts have drawn a line in this area, consistently distinguishing between causes of action seeking review of the merits of a decision and those seeking to enforce compliance with procedural requirements. Turning first to the former, "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins*, 68 F.3d at 1322 (citations omitted). The same cannot be said, however, for properly pled allegations of procedural violations.

Regulations are given the force of law even though the decision to promulgate them may have been inherently discretionary. *United States v. Nixon*, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Service v. Dulles*, 354 U.S. 363, 368, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Voge*, 844 F.2d at 779 (explaining that "government officials must follow their own regulations, even if they were not compelled to have them at all ...."); *Barnes v. United States*, 57 Fed.Cl. 204, 209 (2003). "[O]nce the Secretary promulgated regulations and instructions and made them the basis [for his decision], his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all." *Sargisson*, 913 F.2d at 921; see also *Spherix, Inc. v. United States*, 58 Fed.Cl. 351, 355 (2003). The regulations are there for a reason, and once in place, they must be adhered to.

Plaintiff has made a prima facie allegation that defendant violated provisions of CICA, OCI, as well as implementing FAR regulations. The substance of plaintiff's complaint is that the military failed to follow its own regulations. Such allegations are plainly reviewable in this court. *Adkins*, 68 F.3d at 1323; *Murphy*, 993 F.2d at 873–74; *Sargisson*, 913 F.2d at 921–22. None of the concerns which would arise if the court reviewed the merits of a decision are present when the court reviews the military's actions to ascertain if they comply with regulatory constraints. It has long been within the province of this court's competence to ensure that regulations are being followed. See *Voge*, 844 F.2d at 780 (noting that the inquiry must be one which the court can "soundly administer within [its] special field of competence"). It likewise cannot seriously be contended that the court is in any manner intruding upon the military's discretionary domain. Rather, "the tests or standards against which this court measures the *military's* conduct are inherent: they are the applicable statutes and regulations." *Adkins*, 68 F.3d at 1323 (citing *Murphy*, 993 F.2d at 873) (emphasis added). The court would be doing nothing more than discerning whether the applicable statutes or regulations were complied with.

## I. Unusual and Compelling Urgency

Plaintiff alleges a violation of CICA and implementing FAR regulations. With the exception of several limited circumstances, 10 U.S.C. § 2304 mandates procurement

through "full and open competition." Pursuant to the authority vested in the head of an agency, however, "procedures other than competitive procedures [may be used] only when—the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals ...." 10 U.S.C. § 2304(c)(2); see also 48 C.F.R. § 6.302–2.

In keeping with its preference for "full and open competition," the statute indicates that "the head of an agency using procedures other than competitive procedures ... by reason of the application of subsection (c)(2) ... shall request offers from as many potential sources as practicable under the circumstances." 10 U.S.C. § 2304(e). The agency head's discretion to invoke the exception is also not unfettered; a justification is required and "[e]ach justification shall contain sufficient facts and rationale to justify the use of the specific authority cited." 48 C.F.R. § 6.303–2(a). In addition, the exception has been interpreted as containing an implicit limitation that "the agency take reasonable steps to accurately determine its needs and describe them." *Matter of Signals & Sys., Inc.*, B–288107, 2001 CPD ¶ 168, at 12, 2001 WL 1150705, at *9, 2001 U.S. Comp. Gen. LEXIS 149, at *26 (Sept. 21, 2001). The agency head's discretion is subject to this limitation because "the urgency justification cannot support the procurement of more than a minimum quantity needed to satisfy the immediate urgent requirement." *Id.*

In an analogous setting, the Federal Circuit cast significant light on the issue. In *RAMCOR*, the Federal Circuit held that this court had jurisdiction to review the Immigration and Naturalization Service's (INS) decision to override the automatic stay which goes into effect upon the filing of a pre-award bid protest. *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286 (Fed.Cir. 1999). The significance of *RAMCOR* to the issue before the court derives from the standard which the INS employed in making its determination to override the stay. The INS was permitted to override the stay only upon a written finding of " 'urgent and compelling circumstances which significantly affect interests of the United States which will not permit waiting ....' " *Id.* at 1287 (quoting 31 U.S.C. § 3553(c)(2)). The Federal Circuit explained that 28 U.S.C. § 1491(b)(4), which incorporated the Administrative Procedure Act's (APA) standard of review into bid protests, provided the "substantive requirements" for review of the written findings supporting the "urgent and compelling circumstances" necessary for an agency override. *Id.* at 1290.

The operative language of 10 U.S.C. § 2304(c)(2) and 31 U.S.C. § 3553(c)(2) is substantively similar. The former permitting the agency to bypass full and open competition upon a showing of "unusual and compelling urgency;" the latter allowing an agency to override an automatic stay upon demonstrating "urgent and compelling circumstances." Putting aside the linguistic similarity between the two phrases, the reasoning of *RAMCOR* is equally applicable here: 28 U.S.C. § 1491(b)(4), through its incorporation of APA standards of review, provides the "substantive requirements" for review of an agency's invocation of the "unusual and compelling urgency" exception to full and open competition. See *id.*; see also *Wash. Baltimore Cellular Ltd. P'ship v. United States*, No. 98–50C, 1998 U.S. Claims LEXIS 282, at *1–4 (Sept. 17, 1998) (examining carefully the justification for invoking the "unusual and compelling urgency" exception and concluding that it was "weak and conclusory with respect to the urgency ... and potential for serious injury"). Further, the Federal Circuit's opinion was without reference to any indication that review of the issue was precluded on the basis of nonjusticiability. *RAMCOR*, therefore, supports the proposition that an agency's invocation of the "unusual and compelling urgency" exception, and its inherent limitations, is subject to judicial review.

This conclusion is consistent with other decisions of this court which have found agency actions reviewable. For example, in *PGBA* the agency invoked 31 U.S.C. § 3553(d)(3)(C) to override CICA's automatic

stay. *PGBA, LLC v. United States,* 57 Fed. Cl. 655, 656 (2003). Specifically, the agency relied on the following provisions: 1) "performance of the contract is in the best interest of the United States," and 2) "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting . . . ." *Id.* The defendants in *PGBA* conceded that this court could review the justifications for the "urgent and compelling circumstances" exception. *Id.* at 659. Although the defendants argued that "best interest" was unreviewable, this court concluded the override decision was "subject to review under the section 706 standard." *Id.* at 660. Therefore, the court's review of the military's justification for the exception is not as novel as defendant suggests. As can be gleaned from both *RAMCOR* and *PGBA,* which applied and interpreted statutory and regulatory provisions, it is apparent that the APA standard of review has been held to provide the "substantive requirements" necessary for judicial review. Cf. *Spherix,* 58 Fed.Cl. at 357 (concluding that the Secretary's determination of "public interest" must comply with applicable statutes and regulations).

The government's invocation of an exception to full and open competition has also been reviewed on two additional grounds by other tribunals. In *Aero Corp.,* the United States District Court for the District of Columbia (D.C. District Court) analyzed whether in deciding to issue a sole-source award the contractor attempted to solicit proposals " 'from the maximum number of qualified sources consistent with the nature and requirements of the services to be procured' when 'time of delivery will permit.' " *Aero Corp. v. Dep't of the Navy,* 540 F.Supp. 180, 207 (D.D.C.1982); see also 10 U.S.C. § 2304(e). Further, in *Signals & Systems,* the Army had issued a sole-source award for an enormous quantity of electrical start systems for one of its vehicles. *Signals & Sys.,* B–288107, 2001 CPD ¶ 168, at 7, 2001 WL 1150705, at *4, 2001 U.S. Comp. Gen. LEXIS 149, at *14. The Comptroller General reviewed what actions, if any, the Army undertook to discern the "minimum quantity

needed to satisfy the immediate urgent requirement." *Id.,* 2001 WL 1150705, at *6, 2001 U.S. Comp. Gen. LEXIS 149, at *19. That tribunal also noted that the Army should have exercised reasonable diligence in ascertaining this number, and in failing to do so, plainly did not know how many items it needed. *Id.,* 2001 WL 1150705, at *9, 2001 U.S. Comp. Gen. LEXIS 149, at *24, 27. Once again, the import of these cases is clear; they demonstrate a lack of hesitation on the part of the judiciary to review military actions for compliance with regulations.[11]

## II. Organizational Conflict of Interest

■ Plaintiff has also alleged that defendant violated OCI regulations. For that matter, 48 C.F.R. § 9.505–1 provides, in pertinent part:

A contractor that provides systems engineering and technical direction for a system but does not have overall contractual responsibility for its development, its integration, assembly, and checkout, or its production, shall not (1) be awarded a contract to supply the system or any of its major components or (2) be a subcontractor or consultant to a supplier of the system or any of its major components.

The court is not persuaded that the Army may simply disregard OCI constraints under the auspices of an "unusual and compelling urgency." Notwithstanding the invocation of the exception to full and open competition, this court has repeatedly reviewed an agency's compliance with OCI requirements. In *Informatics,* four of the six counts in the plaintiff's complaint explicitly alleged that the agency failed to adhere to OCI regulations. *Informatics, Corp. v. United States,* 40 Fed.Cl. 508, 512–513 (1998). The plaintiff argued that the agency's actions contravened FAR regulations by failing to consider the conflict mitigation plan it submitted and by failing to explain how the plan did not avoid or mitigate the alleged conflict. *Id.* at 514. This court acknowledged that a "disappointed bidder may argue that the award violated

---

11. Although the court is not bound by decisions of the D.C. District Court or the Comptroller

General, the court finds their reasoning persuasive in this regard.

an applicable procurement regulation," *id.* at 513 n. 9, and engaged in an analysis of the agency's actions to determine if they adhered to regulation. *Id.* at 514–18.

Likewise, in *DSD Laboratories,* the plaintiff protested the decision of the United States Air Force to exclude it from a procurement because of an organizational conflict of interest. *DSD Labs., Inc. v. United States,* 46 Fed.Cl. 467, 468 (2000). This court extensively analyzed whether the contracting officer had a reasonable basis for concluding that an OCI existed and whether the contractor should have been excluded on this basis. *Id.* at 472–77. This court also examined whether the contractor was afforded an opportunity to respond to the contracting officer's OCI concerns and submit a mitigation plan. *Id.* at 475–77. Irrespective of the ultimate holdings in *Informatics* and *DSD Laboratories,* both cases stand for the proposition that a plaintiff's allegation of a violation of OCI regulations is reviewable.

Based on the foregoing, it is, therefore, hardly surprising that defendant exerted little effort in contesting whether a violation of CICA, OCI, and implementing FAR regulations could be reviewed.

III. Requested Relief

■ Defendant devotes most of its attention to arguing that there are no tests or standards by which to gauge the propriety of the decision to authorize the procurement of 240 engine inlet barrier filters. Defendant contends that the court cannot supply relief because it does not have the ability to determine the number of engine inlet barrier filters that are necessary to fulfill the operational needs of the armed forces in Iraq. Further, defendant maintains that the relief sought would require the court to engage in the continued surveillance of military operations, an approach rejected by the United States Supreme Court (Supreme Court) in *Gilligan.*

Defendant's reliance on *Gilligan* is misplaced as its selective quotation fails to acknowledge the portions of the opinion which run contrary to its position in this litigation.

In *Gilligan,* the Supreme Court did hold that the case presented a nonjusticiable controversy because the relief requested was in essence a request for initial judicial review, and continuing judicial supervision, of an equal branch of government. *Gilligan,* 413 U.S. at 5–12, 93 S.Ct. 2440. The Supreme Court, however, in the same breath also limited its holding in the following manner:

> In concluding that no justiciable controversy is presented, it should be clear we neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief. We hold only that no such questions are presented in this case.

*Id.* at 11–12, 93 S.Ct. 2440. The Supreme Court further elaborated: "[T]here is nothing in our Nation's history or in this Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied." *Id.* at 12 n. 16, 93 S.Ct. 2440 (quoting *Laird v. Tatum,* 408 U.S. 1, 15–16, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). Plaintiff's causes of action alleging a "violation[ ] of law for specific unlawful conduct by military personnel" fall squarely within the situation envisioned by the Supreme Court as one in which the judiciary could supply relief. *Gilligan,* therefore, does not assist defendant.

In addition, defendant fails to appreciate the subtle distinction between its position and plaintiff's request for relief. Defendant is technically correct that "the APA, CICA, the implementing regulations—none of those speak, or give the Court any guidance, as to how many [engine inlet barrier filter] systems the Army should be allowed to procure." [12] Defendant's position is tantamount to the argument that because the statutes and regulations do not expressly provide, for example, that the number of engine inlet barrier filters must be limited to three times the number of UH–60 Blackhawk helicopters

12. Tr. at 44.

in combat, judicial review is precluded. Plaintiff's argument, however, delves deeper than defendant's superficial reliance on the lack of an explicit formula for ascertaining the minimum number of engine inlet barrier filters. Apart from the requirements that the government justify its invocation of the "unusual and compelling urgency" exception and seek proposals from the maximum number of contractors as practicable, the government is obligated to espouse a rationale that is neither arbitrary nor capricious that the number of items procured pursuant to the exception do not exceed the number necessary to alleviate the current or immediately impending emergency situation. See *RAMCOR*, 185 F.3d at 1290; *PGBA*, 57 Fed.Cl. at 659–60; *Wash. Baltimore Cellular*, 1998 U.S. Claims LEXIS 282, at *1–4; *Signals & Sys.*, B–288107, 2001 CPD ¶ 168, at 9, 11–12, 2001 WL 1150705, at *6, 9, 2001 U.S. Comp. Gen. LEXIS 149, at *19, 25–27. Although this test falls short of a characterization as a rigid formula, it is nevertheless a manageable standard by which the court can judge the government's conduct and by which the government must comply.

To require that the military operate within the above-enumerated principles does not in any way constrain its ability to effectively function and perform, and in application is preferable to the position advanced by defendant. Taking defendant's argument to its logical extreme, any and all regulations could simply be disregarded any time the military invoked the "unusual and compelling urgency" exception. For example, it would be permissible for the military to procure an unlimited number of engine inlet barrier filters despite the fact that only 240 helicopters were currently being utilized. There would simply be no limit to the number of items the military could procure. The fact that the ultimate destination of the filters is Iraq does not alter this proposition. It is inconceivable that the "unusual and compelling urgency" exception was intended to be used in this fashion in any sphere. The court, therefore, declines to endorse defendant's reasoning in this regard.

In conclusion, the standards employed by the court nevertheless afford the military great latitude in the administration and execution of its affairs. As a corollary to the practical application of these standards, the court is mindful of the "widely acknowledged" principle that it "possess[es] the power to enter summary judgment[ ] *sua sponte* . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also RCFC 12(b) (explaining that a motion for failure to state a claim shall be treated as a motion for summary judgment under RCFC 56 if "matters outside the pleading are presented to and not excluded by the court"); see also *Figueroa v. United States*, 57 Fed.Cl. 488, 504 (2003) (citing *Rockefeller Ctr. Props. v. United States*, 32 Fed.Cl. 586, 589 n. 6 (1995)).

In this regard, the court has closely examined the following factors. The J & A referenced in the complaint and attached to defendant's motion to dismiss provides, and plaintiff does not dispute,[13] that the kits "are an integral part of the maintenance effort and will enhance sustainability by protecting aircraft engines and [Auxiliary Power Units] from the degradation due to ingestion of sand/dust while operating in the desert environment."[14] The J & A also explains that "[s]ince the[ ] operations [in Iraq] began, 400 engines have been removed/replaced at an approximate cost of $300 [million]."[15]

The court, however, will set aside the notion of entering summary judgment at this time. The only issue argued and briefed before the court was that of justiciability. Plaintiff was also not in the position to come forward with all of its evidence on the merits as the Administrative Record was only filed on January 28, 2003. See *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548. Although the court provided notice at oral argument that it would examine the Administrative Record when it was filed, the court recognizes that the Federal Circuit has emphasized the im-

---

**13.** It should be noted that plaintiff acknowledges that there exists a need for the engine inlet barrier filters. See Compl. ¶ 3; Pl.'s Resp. at 5.

**14.** Def.'s Mot.App. A at 1.

**15.** *Id.* at 2.

portance of providing a party "the opportunity to present reasons why summary judgment would not be appropriate." *Thoen v. United States*, 765 F.2d 1110, 1113 (Fed.Cir. 1985); see also *id.* at 1113–15. Plaintiff, therefore, will not be deprived of the chance to argue its position at the next stage of this litigation.

### Conclusion

For the above-stated reasons, Defendant's Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted is hereby DENIED. Plaintiff's allegations that the military exceeded its authority by failing to adhere to statutory and regulatory prescriptions, and its attendant request for relief, present a justiciable controversy. The parties shall file motions for judgment upon the administrative record simultaneously by Friday, February 13, 2004. The parties shall respond simultaneously by Thursday, February 19, 2004. The parties may reply by Monday, February 23, 2004.

IT IS SO ORDERED.